UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

Junet Caidor,

                                        Plaintiff,


        -v.-                                          5:03-CV-00031
                                                     (NPM)


Onondaga County, Shawn McCarthy,
Sheryl Karpinski, Tedy Spooner, John
Balloni, and Maureen Cramer,

                                        Defendants.

APPEARANCES:                        OF COUNSEL:


JUNET CAIDOR
Plaintiff, *pro se*
206 Merriman Avenue
Syracuse, New York 13204


HON. ANTHONY P. RIVIZZIGNO        KAREN ANN BLESKOSKI
ONONDAGA COUNTY ATTORNEY         Assistant County Attorney
Attorneys for Defendants
John H. Mulroy Civic Center
421 Montgomery Street, 10th Floor
Syracuse, New York 13202


Neal P. McCurn, Senior District Judge


                   MEMORANDUM-DECISION and ORDER

                                1

## I.      Introduction

Presently before the court in this employment discrimination case are two dispositive motions filed by defendants, Onondaga County ("the County"), Shawn McCarthy ("McCarthy"), Cheryl Karpinski ("Karpinski"), Tedi Spooner ("Spooner"), John Balloni ("Balloni"), and Maureen Craner ("Craner"), (collectively, "Defendants").[1]  Defendants initially filed a  motion to dismiss pursuant to Fed. R. Civ. P. 37(b)(2)(c), and thereafter submitted a motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Also pending before the court is an appeal of the Magistrate Judge's Order denying two discovery related motions filed by *pro se* plaintiff, Junet Caidor ("Caidor" or "Plaintiff").  Both of the motions and the appeal have been taken on the papers submitted without oral argument.

## II.     Background

Plaintiff's Second Amended Complaint ("the Complaint") purports to set forth two causes of action for employment discrimination.  Plaintiff claims to have suffered unlawful termination, unequal terms and conditions of employment, retaliation, harassment and conspiracy to interfere with his civil rights related to his unsuccessful application for employment with the Onondaga County Department of Social Services ("DSS") and his termination from employment with the County's Department of Emergency Services ("911 Center").  Specifically, Plaintiff alleges that defendants County and Karpinski failed to hire him for the position of "data entry" based on his race, color and gender, and that during the interview for said position, Karpinski harassed Plaintiff based on a perceived

---

[1] The names of several Defendants are incorrectly spelled on the caption of the Amended Complaint.  The correct spellings are reflected here.

disability.  See Compl. ¶ 8(c).  Next, Plaintiff alleges that while he was employed as a "911 Operator trainee" defendants McCarthy and Spooner harassed him based on his race, color, gender and perceived disability.  See id. ¶ 8(a).  Plaintiff further alleges that defendant Balloni terminated him from the "911 Operator trainee" position for failing to report that he has a criminal record.  See id. ¶¶ 8(b)(d). Finally, Plaintiff alleges that defendants County, Craner and Balloni decertified him from four County positions in retaliation for Plaintiff's complaints of discrimination with "NY Human Right[s]".  See id. ¶ 8(g).

In Count I of the Complaint Plaintiff purports to set forth a claim for harassment based on race, color, gender and perceived disability against McCarthy, Spooner and Karpinski pursuant to Title VII,  the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 1981 and 1983, and New York Human Rights Law.  In Count II of the Complaint, Plaintiff purports to set forth a claim of discriminatory discharge and retaliation against the County, Balloni and Craner in violation of his free speech, equal protection and due process rights and pursuant to Title VII, ADA, 42 U.S.C. §§ 1981, 1983 and 1985, and New York Human Rights Law.

## III.  Discussion

The outcome of Plaintiff's appeal of the Magistrate Judge's Order will determine the record upon which Defendants' motion for summary judgment is vetted.  As such, the court will address Defendants' motions after resolution of Plaintiff's appeal.

### A.    Appeal of Magistrate Judge's Order

On November 30, 2004, Hon. David E. Peebles, United States Magistrate Judge, entered an Order denying Plaintiff's motion to suppress his September 8,

2004 deposition transcript and also denying Plaintiff's motion for sanctions and to preclude a document utilized by Defendants during said deposition. Magistrate Judge Peebles further awarded expenses, including attorneys' fees, incurred by Defendants in opposing said motions. Plaintiff appealed, and Defendants responded. Plaintiff did not reply.

After consideration of objections to the order of a magistrate judge, the district court shall modify or set aside any portion of said order which is clearly erroneous or contrary to law. See Fed. R. Civ. P. 72(a); Trafalgar Power, Inc. v. Aetna Life Ins. Co., 427 F.Supp.2d 202, 212 (N.D.N.Y. 2006).

Here, in a carefully reasoned opinion, Magistrate Judge Peebles set forth his determination that no basis existed upon which to grant Plaintiff's request for suppression of his deposition transcript. Regarding Plaintiff's motion to preclude, the Magistrate Judge noted that Plaintiff did not request the document at issue, nor was it subject to the mandatory disclosure requirement of Fed. R. Civ. P. 26(a)(1), and as such, no violation of discovery rules occurred which would warrant preclusion. Finally, Magistrate Judge Peebles based his award of attorneys' fees on his finding that Plaintiff's motions were not substantially justified nor did any other circumstances exist which would make an award of expenses unjust. No portion of this Order is clearly erroneous or contrary to law. As such, Plaintiff's appeal is denied.[2]

### B.    Motion for Summary Judgment

For the reasons that follow, there are no questions of material fact as to any

---

[2] Notwithstanding this court's order resolving Plaintiff's appeal in favor of Defendants, Plaintiff's timely filed opposition to the reasonableness of expenses sought by Defendants remains for resolution before Magistrate Judge Peebles. See Dkt. No. 74.

of Plaintiff's causes of action, and therefore, Defendants' motion for summary judgment is granted.  As such, Defendants' motion to dismiss pursuant to Rule 37 need not be addressed.

### 1.   Facts

#### a.   The Data Entry Equipment Operator Position

In December 2000, Plaintiff, a black male, applied to take civil service exams for the following three County positions: probation officer/trainee, tax clerk, and public safety telecommunicator.  See Aff. of Junet Caidor, Jan. 23, 2005 ("Caidor Aff.") ¶ 3, Dkt. No. 77; Dep. of Junet Caidor, Sept. 9, 2004, 12:19-14:15 ("Caidor Dep."), Ex. A to Aff. of Karen A. Bleskoski, Oct. 27, 2004 ("Bleskoski Aff."), Dkt. No. 64; Aff. of Maureen Craner, Oct. 22, 2004, ¶ 16 ("Craner Aff."). Dkt. No. 64; Exs. B, C and D to Bleskoski Aff.  Two months later, Plaintiff applied to take the civil service exam for the data entry equipment operator position.  See Caidor Dep., 14:16-15:4; Ex. E to Bleskoski Aff.; Craner Aff. ¶ 17. On each of Plaintiff's four applications, the box next to "No" was checked after the question, "Have you ever been convicted of any crime (felony or misdemeanor)?"  See Exs. B through E to Bleskoski Aff.

Plaintiff scored a 75 on the examination for the tax clerk position, and a 70, which is the lowest possible passing score, on the exams for the three remaining positions.  See Craner Aff. ¶¶ 10, 18.  In October 2001, Plaintiff reported to the DSS offices on the fifth floor of the County Civic Center to interview for the data entry equipment operator position.  According to Defendant Karpinski, Plaintiff appeared at her office door unaccompanied, despite signs barring anyone but DSS employees from going beyond the fifth floor reception area.  See Aff. of Cheryl Karpinksi, Oct. 21, 2004, ¶¶ 5, 11.  Karpinski alleges she informed Plaintiff that

he was early and escorted him to the reception area.  See id. at ¶ 13.

Although the panel of persons who interviewed Plaintiff, including Karpinski, agreed that Plaintiff had a good interview, Plaintiff was not offered the position.  See id. ¶¶ 16-17.  Instead, the position was offered to, and accepted by, an individual with more relevant experience than Plaintiff.  See id. at ¶ 18. Plaintiff was told by telephone and in writing that he was not to be offered the position, but that his name would remain on the DSS eligibility list.  See id. at ¶ 19.

According to Plaintiff, when he appeared in Karpinski's doorway, she "yelled and screamed" that he shouldn't have been brought in the office.  See Caidor Dep. 19:5-22.  Plaintiff further alleges that, based on Karpinski having yelled at him, she assumed that he was either on drugs or mentally ill.  See id. 21:25-22:16.  Plaintiff also alleges, without further explanation, that the "negative treatment" he received during his DSS interview led him to the conclusion that Karpinski perceived him to be disabled.  See id. 23:4-19.  By affidavit as part of his opposition papers, Plaintiff explains that during his interview, "Karpinski made a bizarre gestures (sic) with her elbow on her hip, stare (sic) at plaintiff and waited for a reaction."  Caidor Aff., ¶ 8.  Plaintiff further explaines that as a result, he was "insulted and humiliated as being regarded as mentally ill by make a silly gestures (sic)."  Id. ¶ 9.  Finally, Plaintiff concludes, "Karpinski was condescending and discriminatory . . . and treated [me] like a (sic) idiot."  Id. ¶ 10. On January 31, 2002, Plaintiff filed a complaint with the New York State Division of Human Rights alleging that DSS refused to hire him based on his race, color and gender.  See Ex. I to Bleskoski Aff.

**b.    The Public Safety Telecommunicator Position**

On February 6, 2002, Plaintiff met with Defendant Balloni, as well as two other individuals, to interview for the position of public safety telecommunicator at the County's Department of Emergency Communications ("911 Center").  See Aff. of John M. Balloni, Oct. 26, 2004 ("Balloni Aff.) ¶¶ 2, 12, Dkt. No. 64; Caidor Dep. 25:14-26:7.  Balloni, as Deputy Commissioner of the 911 Center, was responsible for the hiring and firing of all 911 personnel.  See Balloni Aff. ¶¶ 2, 5. According to Balloni, during the interview, Plaintiff indicated that he had no criminal history and had only a speeding violation.  See id. ¶ 13.  At the time of his interview, Plaintiff completed and signed an employee questionnaire.  See Ex. K to Bleskoski Aff.; Caidor Dep. 26:5-12.  One of the questions therein presented to Plaintiff was whether he had ever been convicted of any crime.  See Ex. K to Bleskoski Aff., p. 6.  At his deposition, Plaintiff testified that he responded to this question in the negative.  See Caidor Dep., 26:8-23.  Plaintiff's testimony is further supported by the photocopy of said application submitted by Defendants in support of their motion for summary judgment.  See Ex. K to Bleskoski Aff. A review of the application further reveals handwriting on a "supplemental sheet" above Plaintiff's signature which states "no criminal records other (than (sic) speeding 1990)[.]" Id.  Nonetheless, by affidavit in his papers in opposition to this motion, Plaintiff argues that on the back of his application he wrote that he had a record of an incident of speeding/resisting arrest, and that during his interview he explained that "the incident was the worse (sic) thing he did in his life."  Caidor Aff. ¶ 16.

By letter dated February 20, 2002, Balloni offered Plaintiff the public safety telecommunicator position "conditioned upon the successful completion of a background investigation and drug testing."  Ex. M to Bleskoski Aff.; Balloni

Aff., ¶ 14;Caidor Dep. 30:20-32:16.  Plaintiff accepted the offer and began his employment on March 11, 2002.  See Caidor Dep. 32:6-21; Balloni Aff. ¶ 15; Ex. N to Bleskoski Aff.  On his first day of employment, Plaintiff received a copy of the Onondaga County Employees Handbook, which states, among other things, that after the first offense of falsifying County records, including an employment application, an employee will be suspended, and reviewed for discharge.  See Exs. O & P to Bleskoski Aff.; Ex. A to Caidor Aff.

Defendant Spooner was responsible for training Plaintiff, along with Defendant McCarthy and two other trainees, both female: one African American and the other Caucasian.  See Aff. of Tedi Spooner, Oct. 20, 2004 ("Spooner Aff.") ¶¶ 3-4, Dkt. No. 64.  Neither Spooner nor Balloni ever observed anyone treat Plaintiff in a disrespectful or discriminatory manner, nor did Plaintiff ever complain that he was treated in such a way.  See id. ¶¶ 19, 21; Balloni Aff. ¶¶ 35, 37.  Both Spooner and Balloni also affirm that neither ever believed Plaintiff had a disability, and nothing about Plaintiff's actions or manner would have led either of them to reach such a conclusion.  See Spooner Aff. ¶ 22; Balloni Aff. ¶ 34. Plaintiff testified that during his training, Spooner continuously spoke about "how they related (sic) to law enforcement and that if they don't like . . . you, that they'll have you fired."  Caidor Dep. 35:7-12.  Based on these statements, Plaintiff testified, he felt Spooner was harassing him to quit because she felt "a black man from Syracuse is not qualified to work at 911."  Caidor Dep. 34:19-35:5.  Plaintiff further states that "they" harassed him by asking him personal questions about his qualifications.  See Caidor Dep. 35:9-20.  Finally, Plaintiff claims that Spooner delayed training by discussing "nonsense unrelated to the job."  Id. 37:6-13.

By affidavit, Plaintiff states that one day in the cafeteria, Defendant

McCarthy "gave [him] the finger" and that McCarthy and Spooner "made the same gesture of quickly placing both elbow on hip (sic) , and stare[.]" Caidor Aff. ¶¶ 20, 21.  Also in his affidavit, Plaintiff recites an instance when he returned to the training room early after a lunch break, as was his typical practice, and found a wide open purse on top of a wide open duffel bag.  See Caidor Aff. ¶ 27.  Plaintiff concludes that the "employees" were conspiring to induce him to steal.  See id.

On March 14, 2002, Balloni learned that Plaintiff's background investigation revealed  a criminal history.  See Balloni Aff. ¶ 18.  The New York State Division of Criminal Justice Services ("DCJS") informed Balloni that in September 2000, Plaintiff was convicted of resisting arrest, a class A misdemeanor, as well as a speeding violation, and that approximately one month later, Plaintiff was sentenced to three years probation and a $120 fine.  See id. ¶ 19; Ex. KK to Bleskoski Aff.  The next day, at Balloni's request, Spooner escorted Plaintiff to Balloni's office, whereupon Plaintiff was informed by Balloni that he was being terminated for falsifying his employment application.  See Balloni Aff. ¶¶ 20-22; Spooner Aff. ¶ 15.  See also Ex. C to Caidor Aff.  During the meeting, Plaintiff admitted that he had served probation, but denied that he had a criminal conviction.  See Balloni Aff. ¶ 22.  According to Plaintiff, he told Balloni that he was involved in a speeding and resisting arrest incident in 1990, to which Balloni replied that Plaintiff was being terminated for having a criminal record.  See Caidor Aff. ¶ 32.  After the meeting, Balloni instructed security to escort Plaintiff from the building.  See Balloni Aff. ¶ 24; Spooner Aff ¶ 18.

### c.    Decertification Hearing

On March 18, 2002, Plaintiff appeared at the County's Personnel Department, and questioned the reason for his termination from the 911 Center.

9

See Craner Aff. ¶ 19.  Because the Personnel Department was unaware of Plaintiff's hiring by the 911 Center, a representative of the Department contacted Balloni and informed him that Plaintiff could not be dismissed before his probationary period ended without due process as outlined in Section 50 of the New York Civil Service Law ("Section 50").  See id. ¶¶ 20-21; Balloni Aff. ¶ 25. See also N.Y. Civ. Serv. Law § 50 (McKinney 2005).  Balloni thereupon submitted a written request to the Personnel Department seeking to terminate Plaintiff and decertify him from eligibility for the public safety telecommunicator position.  See Balloni Aff. ¶ 26; Craner Aff. ¶ 22; Ex. S to Bleskoski Aff.  Based upon the contents of the letter, as well as the supporting documentation, which included, among other things, Plaintiff's employment questionnaire and the DCJS report, the Personnel Department determined that sufficient evidence existed to begin decertification and termination proceedings under Section 50.  See Craner Aff. ¶¶ 22-23.  The Personnel Department thereafter issued a letter to Plaintiff on March 20, 2002, informing him of its intent to decertify him from the public safety telecommunicator position pursuant to New York Civil Service Law section 50.4(f)(g), and notifying Plaintiff that he had until March 29,2002 to respond in writing or request a hearing.  See id. ¶ 24; Ex. T to Bleskoski Aff.  Plaintiff's time to respond was extended until April 9, 2002, after Plaintiff alleged having not received the letter until April 2, 2002.  See Craner Aff. ¶ 25; Ex. X to Bleskoski Aff.

In the meantime, Balloni notified Plaintiff in writing that he was to be placed on administrative leave pending a possible Section 50 decertification hearing, and that his payroll checks would be mailed to his residence.  See Balloni Aff. ¶¶ 27-28; Ex. U to Bleskoski Aff.  On March 26, 2002, Plaintiff wrote to

Balloni asking for a written explanation of the reasons for his termination, to which Balloni responded in writing, on April 2, 2002, that Plaintiff was terminated for falsifying his employment application, not for having a criminal record.  See Balloni Aff. ¶¶ 29-30; Exs. V & W to Bleskoski Aff.

On April 11, 2002, Plaintiff was notified that his requested hearing would take place on April 17, 2002, and that it was the Personnel Department's intent to decertify him from the tax clerk, data entry equipment operator and probation trainee eligibility lists as well as decertify him from the public safety telecommunicator list, thereby revoking his appointment to said position.  See Craner Aff. ¶ 28; Ex. Y to Bleskoski Aff.  Craner presided over the hearing, at which Balloni and Plaintiff both testified.  See Craner Aff. ¶¶ 29-30; Balloni Aff. ¶ 31; Ex. Z to Bleskoski Aff.  Balloni testified that Plaintiff was offered the public safety telecommunicator position on the condition of successfully passing a background investigation, and that on his employment application Plaintiff stated that he had never been convicted of a crime, but according to DCJS Plaintiff had indeed been convicted of a Class A misdemeanor and sentenced to probation and fined after a jury trial.  See Ex. Z to Bleskoski Aff.  Plaintiff testified that he was told he had a long list of felony convictions but was refused a copy of the DCJS report.  See id.  Plaintiff further testified that the purported reason for his termination is a pretext for discrimination based on his race, and that he could not comment on the relevant issues being addressed at the hearing because of his pending complaint with the New York Division of Human Rights.  See id.  According to Balloni, it was at the April 17, 2002 hearing that he first learned Plaintiff had filed such a complaint.  See Balloni Aff. ¶¶ 32-33.

After the hearing, Craner presented her findings to the Commissioner of

Personnel, who determined that Plaintiff would be decertified from the eligibility list for the public safety telecommunicator position only.  See Craner Aff. ¶¶ 32-33.  Plaintiff was notified of the decertification by letter, wherein he was further told that he was terminated from said position with the 911 Center.  See id. ¶ 34; Ex. AA to Bleskoski Aff.  On April 30, 2002, Plaintiff filed a complaint against the County with the New York State Division of Human Rights, alleging his termination from the 911 Center was the result of discrimination based on his race, color, gender, and in retaliation for his having filed an earlier Human Rights complaint.  See Caidor Aff. ¶ 45; Ex. BB to Bleskoski Aff.  Plaintiff filed a third Human Rights complaint against the County alleging that his decertification from the eligibility lists of four County positions was the result of discrimination based on his race, color, gender, and in retaliation for his having filed an earlier Human Rights complaint.  See Caidor Aff. ¶ 46; Ex. CC to Bleskoski Aff.

On August 15, 2002, the Division of Human Rights issued three separate determinations as to the three complaints filed by Plaintiff, each finding no probable cause for Plaintiff's allegations.  See Exs. DD-FF to Bleskoski Aff.  On October 10, 2002, the Equal Employment Opportunity Commission ("EEOC") issued three separate notices to Plaintiff, adopting the findings of the Division of Human Rights as to their determinations of Plaintiff's complaints, and notifying Plaintiff of his right to bring a civil suit based on the underlying charges within 90 days.  See Exs. GG-II to Bleskoski Aff.  Plaintiff filed the present lawsuit in this court on January 7, 2003.

### 2.    Analysis

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82 (2d Cir. 2004). "[I]n assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought[.]" See Security Ins., 391 F.3d at 83, citing Anderson V. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505 (1986). While the initial burden of demonstrating the absence of a genuine issue of material fact falls upon the moving party, once that burden is met, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial," see Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002), citing Fed. R. Civ. P. 56(c), by a showing sufficient to establish the existence of every element essential to the party's case, and on which that party will bear the burden of proof at trial, see Peck v. Public Serv. Mut. Ins. Co., 326 F.3d 330, 337 (2d Cir. 2003), cert. denied, 124 S.Ct. 540 (2003). Further, it is important to emphasize that the non-moving party may not meet this burden with mere "conclusory allegations or unsubstantiated speculation." See Overby v. Chase Manhattan Bank & J.P. Morgan Chase, 351 F.Supp.2d 219, 223 (S.D.N.Y. 2005), quoting Scott v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

The court notes that it is mindful of the well-established principle that a *pro se* litigant's papers are to be construed liberally. See Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003). Accordingly, a *pro se* action should not be dismissed unless "it is clear that the plaintiff would not be entitled to relief under any set of

13

facts that could be proved consistent with the allegations." Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir.1997). The Second Circuit has further instructed that, when reviewing *pro se* submissions, a district court should look at them "with a lenient eye, allowing borderline cases to proceed." Fleming v. United States, 146 F.3d 88, 90 (2d Cir.1998) (per curiam) (internal quotation marks omitted).

The aforementioned considerations notwithstanding, as the following more thorough discussion will explain, Plaintiff's submissions cannot be interpreted to establish the requisite question of material fact as to any of his causes of action in order to survive Defendants' motion for summary judgment.

### a.      Title VII, ADA and NYHRL Claims

Employment discrimination claims brought pursuant to Title VII, the ADA and NYHRL are subject to the familiar burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 48-49 (2d Cir. 2002); Geoffrey v. Adelphia Commc'ns Corp., No. 04-CV-570A, 2006 WL 1843325, at *6 (W.D.N.Y. May 30, 2006); Vosatka v. Columbia Univ., No. 04-CV-2936, 2005 WL 2044857, at *5 n.20 (S.D.N.Y. Aug. 25, 2005); Stephens v. State Univ. of N.Y. at Buffalo, 11 F.Supp.2d 242, 247 n.2 (W.D.N.Y. 1998). Under this analysis, the plaintiff first has the burden to demonstrate a prima facie case of discrimination. See Reg'l Econ. Cmty. Action Program, 294 F.3d at 48-49, citing McConnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817. If the plaintiff meets this burden, the defendant next has the burden to provide a legitimate, non-discriminatory reason for the adverse employment action. See Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006), citing McDonnell Douglas, 411 U.S. at 802-04, 93 S.Ct. 1817. If the defendant can make such a showing, the plaintiff

has the opportunity to prove discrimination by, for example, a showing that by a preponderance of the evidence, the defendant's proffered reason is a pretext for discrimination.  See id.

Here, even assuming Plaintiff can establish a prima facie case of discrimination, Defendants have proffered legitimate, non-discriminatory reasons for their actions.  First, Karpinski has affirmed that another, more qualified candidate was offered the data entry equipment operator position at DSS.  While it is true that evidence of one's superior qualifications may suffice, in some cases, to show pretext, see Ash v. Tyson Foods, Inc., 126 S.Ct. 1195, 1197 (2006), Plaintiff has failed to submit any evidence beyond his own speculative or conclusory allegations that he is more qualified than the candidate who was offered the DSS position.  Next, Defendants have submitted Plaintiff's employment applications and employee questionnaire as well as his DCJS report in support of Balloni's and Craner's affirmations that Plaintiff was decertified from the public safety telecommunicator position for lying about his criminal record.  Plaintiff has provided nothing more than his unsupported allegation that he notified Defendants of his criminal conviction in writing on the back of his employee questionnaire, even though on that same questionnaire he replied in the negative to the inquiry about previous criminal convictions.[3]  Viewing this evidence in a light most favorable to Plaintiff, no reasonable jury could find that Defendants' reason for terminating Plaintiff was a pretext for discrimination.  As such, Defendants are entitled to summary judgment as to Plaintiff's Title VII, ADA and NYHRL claims.

------

[3] Moreover, it is notable that this allegation first appears in Plaintiff's papers in opposition to the present motion. Plaintiff was given an opportunity to respond to Balloni's statement about Plaintiff's falsification of the employment application at the decertification hearing, but he omitted any reference to having written anything on the back of said application.

### b.     42 U.S.C. § 1981

According to section 1981, "[a]ll persons . . . shall have the same right in
every State and Territory to make and enforce contracts, . . . and to the full and
equal benefit of all laws and proceedings for the security of persons and property
as is enjoyed by white citizens... ."  See 42 U.S.C. § 1981(a) (2006).  In order to
establish a claim pursuant to § 1981, a plaintiff must submit evidence that (1) he is
a member of a racial minority, (2) defendants intended to discriminate against him
on the basis of his race, and (3) the discrimination concerned an activity
enumerated in the statute.  See Lauture v. Int'l Bus. Machs. Corp., 216 F.3d 258,
261 (2d Cir. 2000).

In support of his § 1981 claim, Plaintiff submits his own allegations of
negative treatment by Defendants and speculates that same was the result of racial
animosity.  Plaintiff failed to submit any evidence that DSS refused to hire him
based on his race or that he was decertified from eligibility for the public safety
telecommunicator position based on his race.  As such, Defendants are entitled to
summary judgment on the § 1981 claims against them.

### c.     42 U.S.C. § 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a
right secured by the Constitution and laws of the United States, and must show
that the alleged deprivation was committed by a person acting under color of state
law."  West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55 (1988); 42 U.S.C.
§ 1983 (2005).  Although a municipal entity is not liable pursuant to § 1983 under
the theory of *respondeat superior*, it may be liable where its employee acted
pursuant to an official policy or custom of said entity.  See Monell v. Dep't of Soc.
Serv. of the City of New York, 436 U.S. 658, 694-95, 98 S.Ct. 2018, 2037-38

(1978); Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408 (2d Cir. 1990).

Here, Plaintiff alleges violations of his First Amendment right to free speech and his Fourteenth Amendment rights to due process and equal protection as predicates to his claims under § 1983.

### i.   First Amendment

Plaintiff first argues that Defendants County, Craner and Balloni decertified him from eligibility for the public safety telecommunicator position in retaliation for his having filed a complaint with the New York Division of Human Rights.

To establish a First Amendment retaliation claim under § 1983, a plaintiff must initially demonstrate by a preponderance of the evidence that:

> (1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment determination against him, so that it can be said that his speech was a motivating factor in the determination.

Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999), citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-87, 97 S.Ct. 568 (1977).  Once such a showing is made, in order to determine "the extent to which a state may regulate the speech of its employees, [the court] must balance 'the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'"  Morris, 196 F.3d at 109 -110, quoting Pickering v. Board of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731 (1968). Finally, a defendant will have a valid defense if it can show, by a preponderance of the evidence, that it would have taken the action it did regardless of plaintiff's speech, see Mt. Healthy City, 429 U.S. at 287, 97 S.Ct. 568, or if it can persuade

the court that its legitimate interests outweigh the free speech interests at stake, see Pickering, 391 U.S. at 568, 88 S.Ct. 1731.

Plaintiff's argument is unsubstantiated by the record.  First, the referenced complaint was filed on January 31, 2002, one week prior to Plaintiff's interview with Balloni, and three weeks prior to the date Balloni extended a conditional offer of employment to Plaintiff.  Second, Balloni affirmed that he did not know of Plaintiff's earlier Human Rights complaint until Plaintiff mentioned it at the decertification hearing on April 17, 2002.  Finally, Balloni took steps to terminate Plaintiff within 24 hours of his learning that Plaintiff had a criminal record, some three weeks after Plaintiff received Balloni's conditional offer of employment.  No reasonable jury could conclude from this set of facts that a causal connection existed between Plaintiff's Human Rights complaint and his ultimate decertification.  As such, Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

### ii.    Due Process Clause

Plaintiff also argues that he suffered a loss of employment as well as anguish, distress and humiliation as a result of Defendants' actions.  Plaintiff further contends that he was decertified from four County positions without a fair and impartial hearing in violation of his due process rights.

The Due Process Clause of the Fourteenth Amendment essentially provides that no state shall "deprive any person of life, liberty, or property, without due process of law".  U.S. Const. amend. XIV, § 1.  Thus, in order to prevail on each due process cause of action, Plaintiffs must establish that they were deprived of some tangible property or liberty interest.  See Patterson v. City of Utica, 370 F.3d 322, 329-30 (2d Cir. 2004); DeMuria v. Hawkes, 328 F.3d 704, 705 (2d Cir.

2003); McMenemy v. City of Rochester, 241 F.3d 279, 285 -286 (2d Cir. 2001).

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1351 (2d Cir. 1994), quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972). Such an entitlement is not created by the Constitution, but may exist pursuant to a contract or state statute. See Velez v. Levy, 401 F.3d 75, 85 (2d Cir. 2005), citing Roth, 408 U.S. at 577, 92 S.Ct. 2701.

While it is true that a property interest may exist in a government job where one has a reasonable expectation that his or her employment will continue, see Roth, 408 U.S. at 576-78, no such interest may be found where there is no employment contract or statutory entitlement to employment. By the same token, there is typically no constitutionally protected property interest in prospective government employment. Abramson v. Pataki, 278 F.3d 93, 100 (2d Cir. 2002), citing MacFarlane v. Grasso, 696 F.2d 217, 221 (2d Cir. 1982). Here, Plaintiff clearly had no more than a unilateral expectation of employment with DSS, as he was merely interviewing for a position there. As for the public safety telecommunicator position, while Plaintiff received an offer of employment, it was expressly conditioned upon the successful outcome of his background investigation. As such, Plaintiff did not have a legitimate claim of entitlement to either position, and therefore, no constitutionally protected property interest existed.

Plaintiff's due process claim may still survive if he can establish that he was deprived of a liberty interest. To be sure, injury to one's reputation, without more,

does not amount to the deprivation of a protectible liberty interest under the
Fourteenth Amendment.  See Walentas v. Lipper, 862 F.2d 414, 420 (2d Dir.
1988), citing Paul v. Davis, 424 U.S. 693, 701-702, 96 S.Ct. 1155, 1160-61
(1976).  However, where the damage to one's reputation accompanies the
deprivation of a "legal right or status", a liberty interest may be implicated.  See
Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004), quoting Abramson v.
Pataki, 278 F.3d 93, 103 (2d Cir. 2002).  Therefore, in order to establish a § 1983
liberty interest claim, also known as a "stigma plus" claim, a plaintiff must bring
forth evidence of

> (1) the utterance of a statement about [him] that is injurious to [his]
> reputation, 'that is capable of being proved false, and that he or she
> claims is false,' and (2) 'some tangible and material state-imposed
> burden ... in addition to the stigmatizing statement.'

Velez, 401 F.3d at 87, quoting Doe v. Dep't of Pub. Safety ex rel. Lee, 271 F.3d
38, 47 (2d Cir.2001), rev'd on other grounds, Connecticut Dept. of Public Safety v.
Doe, 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003).

Additionally, the alleged utterance must have been made public.  See Brandt
v. Bd. of Coop. Educ. Servs., 820 F.2d 41, 44 (2d Cir. 1987), citing Roth, 408 U.S.
at 575, 92 S.Ct. at 2708.  The Second Circuit has said that the purpose of this
"public disclosure" requirement

> is to limit a constitutional claim to those instances where the
> stigmatizing charges made in the course of discharge have been or are
> likely to be disseminated widely enough to damage the discharged
> employee's standing in the community or foreclose future job
> opportunities. In determining the degree of dissemination that
> satisfies the "public disclosure" requirement, we must look to the
> potential effect of dissemination on the employee's standing in the
> community and the foreclosure of job opportunities. As a result, what
> is sufficient to constitute "public disclosure" will vary with the

20

circumstances of each case.

Brandt, 820 F.2d at 44.  Thus, in Brandt, where there were questions of fact as to whether statements included in plaintiff's personnel file were likely to be disclosed to prospective employers, the lower court's ruling of summary judgment on plaintiff's stigma plus claim was reversed.  Id. at 46.  Likewise, where plaintiff's presence on a list of child abusers would necessarily be viewed by her prospective child care employers, as was required by law, the stigma element of her liberty interest claim was deemed to have been satisfied.  See Valmonte v. Bane, 18 F.3d 992, 100 (2d Cir. 1994).  However, where there was no evidence that an allegedly stigmatizing remark was communicated to anyone other than plaintiff's administrator, the court, albeit under a qualified immunity analysis, declined to find that plaintiff's rights were violated.  See Vega v. Miller, 273 F.3d 460, 461 (2d Cir. 2001).

Here, Plaintiff has not alleged, nor has he submitted any evidence which would show that his criminal record was publicized by Defendants.  In fact, during Plaintiff's decertification hearing, Balloni expressed his understanding that he cannot legally release the contents of the DCJS report.  See Ex. Z to Bleskoski Aff. at 8-9.  Balloni's March 18, 2002 letter to the County's Personnel Department specifically instructs that "[the DCJS] report is confidential and may not be given to anyone.  In fact, the report should be secured in a locked file while it is in your custody."  Ex. S to Bleskoski Aff. (emphasis in original).  Because the record is devoid of any facts upon which a reasonable jury could conclude that Defendants published Plaintiff's criminal history, Plaintiff cannot establish a question of fact as to whether he was deprived of a liberty interest.  There likewise being no question of fact as to whether Plaintiff was deprived of a property interest,

21

Defendants are entitled to summary judgment as to the due process claim against them.

### iii.    Equal Protection

Finally, Plaintiff contends that Defendants County, Craner and Balloni deprived him of his right to equal protection.  Pursuant to the Equal Protection Clause of the Fourteenth Amendment, no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1. Essentially, the Equal Protection Clause directs "that all persons similarly situated should be treated alike."  City of Cleburne, Tex. v. Cleburne Living Cent., 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985).

In order to prevail on a § 1983 claim for violation of his right to equal protection of the laws, a plaintiff must establish that the defendant treated him differently compared with others similarly situated.  See Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005).  In addition, a plaintiff must also establish that there was no rational basis for the selective treatment.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000).  Such a claim is commonly known as a "class of one" equal protection claim.  See id.  Alternatively, a plaintiff can prevail on his equal protection claim by showing that "[the] selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  Bizzarro, 394 F.3d at 86, quoting LeClair v. Saunders, 627 F.2d 606, 609-610 (2d Cir.1980).

Here, the latter basis for an equal protection claim is unavailable to Plaintiff for the same reasons that his First Amendment retaliation and § 1981 claims failed.  Specifically, Plaintiff has failed to submit any evidence that Defendants

decertified him from the public safety telecommunicator position based on any impermissible consideration, such as race, or that such decertification was in retaliation for his Human Rights complaint.  As to the former basis, Plaintiff failed to submit any evidence that he was treated differently from others similarly situated, to wit, other public safety telecommunicator candidates with an undisclosed criminal history.  Balloni affirmed that the existence of a criminal record is not automatically grounds for refusal to hire an applicant.  See Balloni Aff. ¶ 7.  However, as Balloni further affirmed, 911 Center employees deal with sensitive information, and as such, must be beyond reproach.  See id. ¶ 8.  Thus, Defendants have articulated a rational basis for decertifying Plaintiff.  Accordingly, Defendants are entitled to summary judgment as to Plaintiff's equal protection claim against them.

### d.    42 U.S.C § 1985

Plaintiff also contends that Defendants County, Craner and Balloni conspired to deprive him of his constitutional right to equal protection in violation of 42 U.S.C. § 1985.  The elements of such a claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) a person who is either injured in his person or property or deprived of any right of a citizen of the United States.  See 42 U.S.C. § 1985(3) (2005).  See also Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999); Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1087-88 (2d Cir. 1993) (citation omitted).  Furthermore, a plaintiff must also establish that the conspirators' action was motivated by some racial discriminatory animus.  See id. at 1088. As with § 1983

liability, an employer cannot be held liable on a claim pursuant to § 1985 for the actions of its employees based on a theory of *respondeat superior*, but may be liable where those employees carried out an official policy or custom of the municipality.  See Monell, 436 U.S. at 694-95, 98 S.Ct. at 2037-38; Owens v. Haas, 601 F.2d 1242, 1247 (2d Cir. 1979).  On a claim against an employer under § 1985, a plaintiff must show that the employer had an official policy or custom "relating to failure to train or to other matters stemming from or resulting in a conspiracy implicating the [employer] itself[.]" Owens, 601 F.2d at 1247.  See also Smith v. City of New York, 290 F.Supp.2d 317, 321 (E.D.N.Y. 2003), citing Davis v. Town of Hempstead, No. 99-7751, 2000 WL 268571 (2d Cir. Mar. 10, 2000) (summary order).

Plaintiff has failed to submit any evidence that he was deprived of a constitutional right, or that any such deprivation was motivated by racial animosity.  As such, Defendants are also entitled to summary judgment on the § 1985 claim against them.

**IV.   Conclusion**

It is ORDERED that no portion of Magistrate Judge Peebles' November 30, 2004 Order (Dkt. No. 69) is clearly erroneous or contrary to law, and as such, Plaintiff's appeal of said order (Dkt. No. 72) is hereby DENIED; and it is further

ORDERED that the motion for summary judgment filed by all Defendants in this action (Dkt. No. 64) as to each cause of action set forth in Plaintiff's Second Amended Complaint is hereby GRANTED; and it is further

ORDERED that Defendants' motion to dismiss filed pursuant to Fed. R. Civ. P. 37 (Dkt. No. 52) is hereby DISMISSED as moot.

This case is referred back to Magistrate Judge Peebles for resolution of

Plaintiff's objections to the reasonableness of costs requested by Defendants (Dkt. No. 74).

       IT IS SO ORDERED.

DATED:     September 11, 2006
              Syracuse, New York

                               Neal P. McCurn
                               Senior  U.S. District Judge